UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SAMUEL KARIM, | ) | |
| | ) | |
| Petitioner, | ) | 11 C 2700 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| MARCUS HARDY, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Samuel Karim, who is serving a life sentence in Illinois state prison for two

first-degree murder convictions and one attempted first-degree murder conviction, seeks a writ

of habeas corpus under 28 U.S.C. § 2254. The petition asserts four grounds for relief: (1) that

the State coerced him into confessing and ignored his requests for an attorney during

questioning, and that the trial judge admitted the confession into evidence in violation of the

Fifth and Fourteenth Amendments; (2) that the State destroyed evidence that might have assisted

his defense, in violation of the Fourteenth Amendment; (3) that the trial judge deprived him of

his Sixth Amendment right to an impartial jury by barring his attorney from asking potential

jurors how they felt about self defense during voir dire; and (4) that the state trial court that

reviewed his state post-conviction claims departed from the procedures mandated by Illinois law,

a ground that Karim says is bolstered by the ineffective assistance provided by his state post-

conviction counsel, in violation of the Sixth and Fourteenth Amendments. Doc. 1 at 5-17. In his

reply brief, however, Karim "withdraws Claims Two and Three," Doc. 25 at 2; *see also id*. at 12,

and so the court will consider only the first and fourth grounds. Karim's habeas petition is denied, and the court declines to issue a certificate of appealability.

**Background**

The parties agree that the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") applies to Karim's petition. The AEDPA provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Rever v. Acevedo*, 590 F.3d 533, 537 (7th Cir. 2010).

Karim's habeas petition disclaimed any challenge to the state trial court's factual findings, which the Appellate Court of Illinois relied upon in rejecting his claims on appeal. Doc. 1 at 5 ("the factual finding made by the trial court are not disputed"). Karim's reply brief, however, states that he "challenges all factual findings from the State court." Doc. 25 at 2. That challenge comes too late: the express disclaimer in the petition of any challenge to the state court factual findings was an explicit and intentional waiver of any such challenge, and even if it was not a waiver, Karim forfeited any such challenge by failing to raise it prior to his reply brief. *See United States v. Gaona*, 697 F.3d 638, 641 (7th Cir. 2012) ("Waiver and forfeiture are related doctrines; waiver occurs when a [litigant] intentionally relinquishes or abandons a known right, whereas forfeiture occurs when a [litigant] fails to timely assert his rights.") (internal quotation marks omitted); *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("the district court is entitled to find that an argument raised for the first time in a reply brief is forfeited").

Forfeiture and waiver aside, Karim's challenge to the state court factual findings is meritless. Karim's reply brief argues that the presumption of correctness owed to the state court factual findings under § 2254(e)(1) should not apply here due to what he characterizes as Illinois's particularly poor record in protecting the rights of criminal defendants:

> Any presumption of correctness is to be denied to Illinois in light of its clear propensity and inclination to ignore and defy the command of law. Its Governor's ignore the law, as does its Judges. Its prosecutor's ignore the law, as does its law enforcement officials. To the extent that AEDPA requires any such presumption, this petitioner reject such an egregious liberty. The facts as relied upon by the Illinois Appellate Court emanated from the State's Attorney Of Cook County and the Chicago Police. It would seem reasonable for this court to conclude that, just as various States were not extended say presumptions where the Voter's Rights Act was concerned due to their clear poor civil rights records, the same standard must be applied where AEDPA and its presumption of correctness are concerned.

Doc. 25 at 3. This argument, while creative, is without merit. Unlike the Voting Rights Act of 1965, *see Nw. Austin Mun. Util. Dist. No. 1 v. Holder*, 557 U.S. 193, 198-99 (2009), the AEDPA does not provide any basis for treating some jurisdictions differently from others. The court therefore will apply the presumption required by § 2254(e)(1).

The last state court to recount the relevant facts was the Appellate Court of Illinois in *People v. Karim*, 853 N.E.2d 816 (Ill. App. 2006), and *People v. Karim*, No. 1-08-710 (Ill. App. Sept. 30, 2009) (reproduced at Doc. 17-12). Karim has not shown by clear and convincing evidence that the state appellate court's findings are incorrect, which means that those findings govern this case. The following sets forth those facts as well as the history of Karim's criminal and post-conviction proceedings in state court.

## A.    Factual Background

The particulars of the crimes of which Karim was convicted are not relevant to his habeas petition, and the court recounts them briefly only for context.  Karim testified that he had been in the business of dealing drugs, particularly heroin.  853 N.E.2d at 826.  His heroin was supplied by two men named Parker and Black.  *Ibid*.  At some point, Parker and Black sold Karim some heroin that Karim had difficulty selling because of its low quality.  *Ibid*.  After Parker refused in a telephone conversation with Karim to replace it with better heroin, they decided to meet in person to resolve their differences.  *Ibid*.  Parker and Black showed up in a car driven by a third man named Harris, Karim got into the car with them, and an argument ensued.  *Id*. at 827.  Harris then attempted to start the car and Karim panicked, because he did not know what Harris intended to do, because he felt threatened by a baseball bat on the floor in the back of the car, and because Black and Parker knew where he lived.  *Ibid*.  So Karim, who had a gun, began shooting.  *Ibid*.  Parker and Harris were killed and Black was badly wounded.  *Id*. at 819.  Black testified at the trial, *id*. at 821-22, and though his account differed somewhat from Karim's, there was no dispute that Karim had shot Parker, Harris, and Black.

Karim was arrested at 1:10 a.m. on October 31, 1996, by two detectives, Duffin and O'Connor.  *Id*. at 824.  Karim initially denied that he had been involved in the shooting, *ibid*., but after approximately 28 hours in custody, at 5:00 a.m. on November 1, Karim admitted to an assistant state's attorney named Anderson that he had shot Black, Parker, and Harris.  *Id*. at 825.  Karim then signed a written statement summarizing his confession.  *Id*. at 825-26.  Only then was he brought before a magistrate for a probable cause hearing.  *Id*. at 819-20.

### B.    Trial and Direct Appeal

Prior to his trial, Karim moved to suppress his inculpatory statement.  In support of that motion, he made the following arguments:

> (1) that his statement was coerced; (2) that he was interrogated despite requesting the assistance of counsel; (3) that he was threatened with the death penalty and promised that he would receive a 20-year sentence if he cooperated; (4) that he was kept isolated at the police station for 30 hours despite requesting counsel; and (5) that the police violated the express terms of the arrest warrant[, which had instructed them to bring Karim before a magistrate "instanter"].

*Id*. at 819, 830.  At the hearing on the suppression motion, Duffin and Anderson testified that they had read Karim his *Miranda* rights, that Karim had never said that he wished to remain silent, that they had not threatened him with the death penalty or promised him a 20-year sentence in return for cooperation, that he was not handcuffed during the interrogation, and that he was given food and allowed to use the restroom.  *Id*. at 819-20.  Duffin did admit, however, that the police had not attempted to bring Karim before a magistrate for a probable cause hearing until after he had confessed, despite express language in the arrest warrant directing them to do so "instanter."  *Id*. at 820.  The trial judge denied the motion to suppress.  *Ibid*.

Karim was convicted and sentenced to death, but the Governor of Illinois commuted his sentence to life in prison while his direct appeal was pending.  *Id*. at 818.  Karim pressed on with his appeal, contending (among other things) that the trial judge had erred in refusing to suppress his confession.  *See id*. at 827-31.  The appellate court held that "the trial court's decision not to suppress the statement was not manifestly erroneous," and thus upheld that decision.  *Id*. at 831. The appellate court reasoned that Karim had not disputed most of the trial court's factual

findings on appeal and that those findings foreclosed most of the arguments he made in support of his suppression motion:

> Karim does not dispute most of the trial court's factual findings. This includes the trial court's findings that Karim understood his rights on the date of his arrest because "the defendant underst[ood] his *Miranda* rights [and had] no mental condition preventing him from doing that." The trial court also found that Karim never asked for an attorney, never said he wanted to remain silent, was never told he would get a 20-year sentence in exchange for his cooperation, and was never threatened with the death penalty. The trial court further found that Karim was given food and drink, allowed access to bathroom facilities and given the opportunity to smoke.

*Id*. at 831; *see also* Doc. 17-2 at 14 (Karim's brief on direct appeal, which states that "the factual findings made by the trial court are not disputed"). The appellate court added that "[b]y accepting most of the trial court's findings, Karim has limited himself to the issue of the time-delay" of some 30 hours between his arrest and his being brought before a magistrate, with the confession occurring around the 28th hour of his confinement. 853 N.E.2d at 831.

The appellate court analyzed that issue at length, discussing various Illinois cases as well as *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), and *Gerstein v. Pugh*, 420 U.S. 103 (1975). 853 N.E.2d at 829-30. The court quoted *McLaughlin*'s statement that "a jurisdiction that provides determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." *Id*. at 830 (quoting *McLaughlin*, 500 U.S. at 56). Because the 30-hour delay in Karim's case fell well short of the 48-hour line established by *McLaughlin*, the court considered whether the 30-hour delay was nonetheless unduly long, relying on decisions of the Supreme Court of Illinois that themselves interpreted and applied the *McLaughlin* standard. *Id*. at 830-31. The appellate court recounted the State's explanations for the delay:

> In this case, the State explained the delay in presenting Karim to the trial court as being time that was needed to confirm Karim's identification by fingerprints and by the eyewitnesses. According to the State, the delay was also necessary because it gave the police time to confirm Karim's identification as the shooter through lineup identifications. During this delay, still well within the time frame outlined in … *Gerstein* and *McLaughlin*, Karim gave his statement.

*Id*. at 831. The appellate court concluded that the 30-hour delay was "not *per se* excessive." *Ibid*. In light of that determination and of the findings made by the trial court and not challenged by Karim, the appellate court concluded that the trial court's denial of the suppression motion "was not manifestly erroneous." *Ibid*.

The state supreme court denied Karim's petition for leave to appeal. *People v. Karim*, 862 N.E.2d 237 (Ill. 2007). Karim did not petition the United States Supreme Court for certiorari.

### C. Post-Conviction Proceedings

Karim then brought a petition for post-conviction relief under the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq*. Doc. 17-8 at 19. The petition argued that Karim had received ineffective assistance of counsel at trial and on direct appeal. *Id*. at 5, 19. The state trial court dismissed the petition as frivolous and denied Karim's motion for reconsideration. *Id*. at 19, 31, 41. In doing so, the court commented on the poor quality of the briefing by Karim's attorney in support of the petition. *Id*. at 30. On appeal, Karim argued that the trial court had erred in dismissing his petition at the first stage of the three-stage review process that Illinois courts use to review post-conviction petitions. *Id*. at 6, 10-13. Karim also argued that his post-conviction counsel before the trial court had been ineffective, citing Illinois case law. *Id*. at 13-14.

The state appellate court affirmed the trial court's first-stage dismissal of Karim's petition. Doc. 17-12. The appellate court agreed with the trial court that Karim's ineffective assistance claim was "frivolous and patently without merit," and thus appropriately rejected at the first stage; the appellate court also held that Karim's post-conviction counsel had met the standard "reasonable assistance" standard applicable applied under Illinois law to the adequacy of post-conviction representation. *Id*. at 5-6. The appellate court denied Karim's petition for rehearing. Doc. 17-11. The state supreme court denied Karim's petition for leave to appeal. *People v. Karim*, 930 N.E.2d 412 (Ill. 2010). Karim then timely filed this federal habeas petition.

## Discussion

As noted above, Karim presses two grounds for habeas relief: (1) that the trial judge erred in refusing to suppress his confession, and (2) that his rights were violated during his state post-conviction proceedings by the trial judge's first-stage dismissal of his petition and by his post-conviction counsel's poor performance. Those claims are considered in turn.

## I.      Karim's Claim That His Confession Should Have Been Suppressed

Karim appears to assert three bases for suppressing his confession: (1) that it was involuntary in light of the length of the time between his arrest and confession as well as the threats and promises allegedly made by the State; (2) that it was obtained in violation of the *Miranda* rule because Karim had requested counsel and the State had failed to provide it or to cease the interrogation; and (3) that it was obtained in violation of the Fourth Amendment because the 28-hour period between the arrest and confession, during which Karim was not taken before a magistrate for a probable cause hearing, amounted to an unreasonable seizure

under *Gerstein* and *McLaughlin*. Doc. 1 at 5-7; Doc. 25 at 7-12. Those arguments do not warrant habeas relief.

The parties agree that Karim properly exhausted his state court remedies regarding this claim, that the state appellate court rejected that claim on the merits, and that the AEDPA governs this court's consideration of the merits of the claim. "[I]n all habeas corpus proceedings under [the AEDPA], the successful petitioner must demonstrate that he 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Brown v. Watters*, 599 F.3d 602, 611 (7th Cir. 2010) (quoting 28 U.S.C. § 2254(a)). "Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision 'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court, § 2254(d)(1); or that it 'involved an unreasonable application of' such law, § 2254(d)(1); or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court, § 2254(d)(2)." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (one citation omitted). In applying the § 2254(d) standard, the federal habeas court reviews "the decision of the last state court that substantively adjudicated each claim." *Gonzalez v. Mize*, 565 F.3d 373, 379 (7th Cir. 2009). The last state court to adjudicate this claim on the merits was the state appellate court, 853 N.E.2d at 827-31, so that is the decision this court must review.

As noted above, Karim's challenge to the state court factual findings were waived, forfeited, and meritless, which means that he cannot obtain habeas relief under § 2254(d)(2). With respect to § 2254(d)(1), the state appellate court's decision rejection of Karim's attempt to suppress his confession was not contrary to or based on an unreasonable application of the decisions of the United States Supreme Court.

The substantive standard governing Karim's argument that his confession was involuntary is as follows: "Whether a confession was voluntary depends on the totality of the circumstances surrounding that confession, including 'both the characteristics of the accused and the details of the interrogation' that resulted in the confession." *Gilbert v. Merchant*, 488 F.3d 780, 791 (7th Cir. 2007) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). The state appellate court applied the "totality of the circumstances" standard. 853 N.E.2d at 829 ("[t]o determine whether the defendant's confession was voluntary, [courts must] consider the totality of the circumstances surrounding it, including the defendant's age, intelligence, education, experience, and physical condition at the time of the detention and interrogation; the presence of *Miranda* warnings; the presence of any physical or mental abuse; and the legality and duration of the detention") (internal quotation marks omitted). Its decision therefore is not "contrary to" federal law. *See Ruvalcaba v. Chandler*, 416 F.3d 555, 561 (7th Cir. 2005) ("The Appellate Court of Illinois recognized that it was required to evaluate the totality of the circumstances surrounding Mr. Ruvalcaba's confession and undertook that task. Therefore, the court was not acting 'contrary to' clearly established law.") (citation omitted).

Nor was the state court's application of the "totality of the circumstances" standard "unreasonable." "A federal court's deference to the state court's resolution of the issues involved is even more important when such resolution requires the weighing of factors against one another: when the constitutional question is a matter of degree, rather than of concrete entitlements, a 'reasonable' decision by the state court must be honored." *Searcy v. Jaimet*, 332 F.3d 1081, 1091 (7th Cir. 2003). The state court's view was that the totality of the

circumstances as found by the trial court and not challenged by Karim on appeal foreclosed his involuntary confession claim:

> Karim does not dispute most of the trial court's factual findings. This includes the trial court's finding that Karim understood his rights on the date of his arrest because "the defendant underst[ood] his *Miranda* rights [and had] no mental condition preventing him from doing that." The trial court also found that Karim never asked for an attorney, never said he wanted to remain silent, was never told he would get a 20-year sentence in exchange for his cooperation, and was never threatened with the death penalty. The trial court further found that Karim was given food and drink, allowed access to bathroom facilities and given the opportunity to smoke.

853 N.E.2d at 831. In the appellate court's view, "[b]y accepting most of the trial court's findings, Karim ha[d] limited himself to the issue of the time-delay" under *McLaughlin*. *Ibid*. It was reasonable for the appellate court to conclude, in light of the trial court's unchallenged findings of fact, which rejected Karim's account of his confession, that the totality of the circumstances showed Karim's confession to have been voluntary. Moreover, the appellate court's acceptance of the trial court's finding that Karim understood his *Miranda* rights and had neither asked for an attorney nor said that he wanted to remain silent foreclosed Karim's *Miranda* argument, which was founded on his own assertion, rejected as a factual matter by the trial court, that he had asked for a lawyer during the time between his arrest and his confession.

As for Karim's claim under *Gerstein* and *McLaughlin*, those cases were decided under the Fourth Amendment. *See Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 481 (7th Cir. 2011) ("*Gerstein* and *McLaughlin* … addressed the Fourth Amendment's requirement of a prompt judicial determination of probable cause following an arrest without a warrant."); *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006) (recognizing that "the *Gerstein*/*McLaughlin* line of cases … apply the Fourth Amendment's reasonableness standard to

the deprivation of liberty suffered by a warrantless arrestee"). Karim himself recognizes this in his reply brief. Doc. 25 at 9 ("it is well settled that a *McLaughlin* violation arises from the Fourth Amendment"). The claim is therefore non-cognizable on federal habeas review. Settled precedent holds that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976); *see also Sanders v. Israel*, 717 F.2d 422, 423 (7th Cir. 1983). The Seventh Circuit has explained that "a 'full and fair opportunity' guarantees only 'the right to present one's case.'" *Watson v. Hulick*, 481 F.3d 537, 542 (7th Cir. 2007) (quoting *Cabrera v. Hinsley*, 324 F.3d 527, 531-32 (7th Cir. 2003)).

Karim plainly had the opportunity to present his case to the state courts; those courts decided, upon full consideration, that his Fourth Amendment arguments were not meritorious. 853 N.E.2d at 827-31. Thus, the state courts satisfied the "full and fair" opportunity standard, which means that this court cannot consider Karim's *Gerstein*/*McLaughlin* claim. *See Ben-Yisrayl v. Buss*, 540 F.3d 542, 551-52 (7th Cir. 2008) (concluding that *Stone* precluded the federal courts from considering a state prisoner's claim under *Gerstein* and *McLaughlin* because he had had a full and fair opportunity to litigate that claim before the state courts); *Bailey v. Hardy*, 2012 WL 182237, at *3-4 (N.D. Ill. Jan. 23, 2012) (same). And even if this court could consider the claim, the state appellate court's decision, 853 N.E.2d at 827-31, applied the appropriate standard from *Gerstein* and *McLaughlin* and did so reasonably.

## II. Karim's Challenges to His State Post-Conviction Proceedings

Karim makes two separate arguments about his state post-conviction proceedings: that the trial court failed to follow the procedure prescribed by Illinois law when it dismissed his post-conviction petition as frivolous at the first stage of Illinois's three-stage process, and that he received ineffective assistance of counsel in pursuing his petition before the state trial court. These arguments cannot ground habeas relief.

Karim begins the first argument with this statement:

> The [Illinois] Postconviction Hearing Act provides a mechanism by which criminal defendants can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution. The Act create[s] a three stage procedure for post conviction relief. At Stage one, the trial court, without input from the state or petitioner, examines the petition to determine whether it presents the gist of a constitutional claim or is frivolous or patently without merit.

Doc. 1 at 14. Karim proceeds to assert that the trial court failed to follow the proper procedures under the Act when it denied his petition at "stage one" rather than proceeding to stage two or three. *See Davis v. Lambert*, 388 F.3d 1052, 1060 (7th Cir. 2004) (describing the procedure followed by Illinois courts under the Illinois Post-Conviction Hearing Act). In essence, he argues that the trial court was supposed to give only a quick, deferential look at stage one, and that it erred by conducting an overly searching review and then denying his petition. Doc. 1 at 14-15.

The court cannot grant habeas relief based only on a state's failure to adhere to its own laws, and so this argument cannot provide a ground for granting Karim's petition unless it somehow implicates federal law. *See* 28 U.S.C. § 2254(a) ("a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment

of a State court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States*") (emphasis added); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions") (citation and internal quotation marks omitted).  A judge in this District recently and correctly rejected an argument identical to Karim's on this very ground.  *See Hemphill v. Hardy*, 2011 WL 2712592, at *6 (N.D. Ill. July 13, 2011) ("Whether the Illinois court misapplied the state law standard under 725 ILCS 5/122-2 [the Illinois Post-Conviction Hearing Act], however, is not a cognizable claim on federal habeas review.").

Perhaps recognizing this, Karim characterizes his claim as one for denial of his right to "Due Process and Equal Protection of Law, under the United States Constitution."  Doc. 1 at 14. A claim that the state courts misapplied state law is cognizable on federal habeas review if the "petition draws enough of a connection between [the petitioner's] right to due process [under the United States Constitution] and the [state courts'] errors."  *Perruquet v. Briley*, 390 F.3d 505, 512 (7th Cir. 2004).  But Karim has not met that standard, for his petition and reply brief make no substantive arguments that connect the trial court's alleged departure from the procedures required by Illinois law to the Federal Constitution's guarantees of due process and equal protection.  Doc. 1 at 14-16; Doc. 25 at 2.  Karim's briefs merely assert that the state trial court did not give his post-conviction petition as much consideration as it should have under Illinois law, an argument that cannot ground federal habeas relief.

It bears mention that Karim is not raising before this court the underlying claims made in his state post-conviction petition, in which he maintained that he had received ineffective assistance at trial and on direct appeal.  Doc. 17-8 at 7 ("The petition raised issues of ineffective

assistance of trial counsel for failure to have the jury properly instructed and ineffective assistance of appellate counsel for failing to raise trial counsel's incompetence on the issue of jury instruction."). Because Karim does not argue that the state courts' decisions on his post-conviction petition were *substantively* incorrect in any way, it is implausible that any *procedural* defect in the decisionmaking process negatively affected his rights under federal law. *See Lechner v. Frank*, 341 F.3d 635, 642 (7th Cir. 2003) ("Violations of state laws are cognizable only if they resulted in fundamental unfairness and consequently violate a petitioner's constitutional rights.").

Karim's ineffective assistance argument fares no better. In his appeal from the denial of post-conviction relief, Karim contended that he had received constitutionally ineffective assistance in his post-conviction proceedings before the state trial court. Karim's attempt to make the same argument before this court is foreclosed by § 2254(i), which provides that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(I); *see Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012) ("§ 2254(I) precludes Martinez from relying on the ineffectiveness of his postconviction attorney as a 'ground for relief'"); *Johnson v. McBride*, 381 F.3d 587, 590 (7th Cir. 2004) ("Once trial and direct appeals have run their course, however, neither the sixth amendment nor federal law guarantees effective assistance of counsel for collateral proceedings.").

## III.    Karim's Request for an Evidentiary Hearing

Karim asks the court conduct an evidentiary hearing. Doc. 1 at 7; Doc. 25 at 7. But the Supreme Court has held that "review under § 2254(d)(1) is limited to the record that was before

the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).  Because Karim's claim that his confession should have been suppressed was presented to and adjudicated on the merits by the state courts, § 2254(d)(1) applies to this court's analysis of that claims, and so *Pinholster* forecloses the court from going beyond the state court record by holding a hearing to collect new evidence.  *See Mosley v. Atchison*, 689 F.3d 838, 844 & n.1 (7th Cir. 2012); *Price v. Thurmer*, 637 F.3d 831, 837 (7th Cir. 2011).  As for Karim's claim that his state post-conviction proceeding was marred by the state trial court's deviation from the Illinois Post-Conviction Hearing Act and by the ineffective assistance of Karim's post-conviction counsel, for the reasons given above, those arguments could not amount to a violation of federal law under any set of facts, which means that a hearing would be futile.  Karim's request for an evidentiary hearing therefore is denied.

### Conclusion

For the foregoing reasons, Karim's petition for a writ of habeas corpus is denied.  Rule 11(a) of the Rules Governing Section 2254 Cases states that "[t]he district court must issue or deny a certificate of appealability [("COA")] when it enters a final order adverse to the applicant."  *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011).  "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The applicable standard is as follows:

> To obtain a COA under § 2253(c), a habeas petitioner must make a substantial showing of the denial of a constitutional right, a demonstration that … includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.

*Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (internal quotation marks omitted); *see also*

*Lavin*, 641 F.3d at 832; *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003). Put another way:

"Where a district court has rejected the constitutional claims on the merits, the showing required

to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong."

*Slack*, 529 U.S. at 484.

      The claims pressed by Karim in his petition do not present difficult or close questions,

and so his petition does not meet the applicable standard. A certificate of appealability is

therefore denied.

January 31, 2013
                                       _____
                                                 United States District Judge